## Village of Enfield v. Martha A. Tyner.

**VERDICTS—*When Not to be Reversed.*—**The court will not reverse a judgment on the ground that the verdict is against the evidence, where there is any evidence on which it may rest, unless it is against the clear weight of evidence.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of White County; the Hon. GEORGE W. WALL, Judge, presiding. Heard in this court at the 'August term, 1897. Affirmed. Opinion filed March 1, 1898.

N. HOLDERBY, attorney for appellant.

S. L. GARRISON and ROSS GRAHAM, attorneys for appellee.

MR. JUSTICE BIGELOW DELIVERED THE OPINION OF THE COURT.

This is an action brought by appellee to recover for injuries alleged to have been received by her, on account of the negligence of the village of Enfield in not keeping a certain sidewalk of the village in a reasonably safe condition for travel, in consequence of which appellee fell and broke her arm and received other injuries.

Appellee recovered a verdict and judgment in the court below for $50 and the only ground urged here for a reversal of the judgment is, that the verdict is against the weight of the evidence.

Appellant does not contest the claim that appellee fell and received the injuries complained of and that she was at the time exercising ordinary care, but the contention is, that she received the injuries by stepping off the sidewalk. Appellant also contends that the walk where appellee met with the accident was in a

reasonably safe condition for travel.   On the part of appellee, nine witnesses besides herself were sworn and testified, and nine witnesses were sworn and testified on behalf of the appellant.

Appellee in her evidence states that she was fifty-four years of age, and resided in the village of Enfield. That on the first day of November, 1895, she, with her two daughters, started to go up into the town, when one of her daughters, who was a little ahead of her, stepped on a loose board in the sidewalk and it tipped up and appellee caught her foot on the board and fell forward and broke her arm.   The place where the accident happened was near a livery stable.   She is fully corroborated by one of her daughters, who was with her.

Two witnesses for appellant, one a trustee of the village, testified they were in a mill across the street from the place where appellee fell, and were looking at her, and that as she reached the end of the sidewalk, joining a plank crossing in front of the livery stable, she stepped off the sidewalk and fell lengthwise of the walk.   Their testimony is largely opinion as to how she got off the walk, but both say they saw her fall. These were the only witnesses for appellant who pretend to have seen the accident.

When we take into consideration the undisputed fact that the sidewalk was an old one, the plank or boards being four feet in length, laid across stringers running lengthwise of the street, it is evident to us that the testimony of these two witnesses strengthen, rather than weaken the evidence of appellee and her daughter, and we are entirely unable to say that the weight of evidence, on the point whether appellee fell off the sidewalk, as she testifies, or stepped off and then fell, is with appellant.

As to the condition of the sidewalk where appellee fell, Joseph Smith, who worked at the livery stable, was a witness for appellee, and the following is a sample of his testimony as it appears from the abstract: "It was probably a month before the accident that I observed the walk, it was a pretty bad walk at that time. The plank was not very solid and the sills were not solid, they were warped and the nails drawn out. I call it in bad condition. I can't say there was any loose plank there at the time of the accident, only I worked on it and helped to nail down some on that walk. I was up there one day and we stopped and patched the walk, we patched all over town. I can say the foundation was rotten under the plank, the sills were rotten, stringers would not hold the nails unless you drove them way out to one side, if you drove them where nails had been they pulled out. I don't think any new stringers had been put in that piece. I have no recollection of it. I have been over the walk most every day."

This witness is fully corroborated by Richard Byran, Emma Byran and five other witnesses, some of whom had fallen themselves or seen other persons fall there.

Almost the entire evidence on the part of the appellant as to the character of the walk comes from the village officials, who appear to have testified candidly, but their testimony is of a negative character such as, "didn't know walk was out of repair; had no notice of it; didn't know stringers were rotten; didn't know boards were loose," etc.

As the testimony of defendant's first witness is a fair sample of all the rest, we copy it entire as abstracted: "I live in Enfield, have lived there seven years. I am living on next street north of where the accident occurred. I was a member of the town board at that time. I saw Mrs. Tyner just after the doctor fixed up her arm and asked her what was the matter. She said

she had fell and broke her arm and was going to sue the town, and I asked her where she fell and she told me. I went back on the street to where I live and told the commissioner to take a hatchet and some nails and go and nail the plank down. I didn't go to the spot at that time. I think it was about two hours after the accident before I went to where she fell. When I got there the street commissioner was not there, but some other men were there, and I went to the place where they said she fell, and I did not find any loose plank there. I don't know whether it had been repaired or not, as I sent Mr. Creel, the street commissioner, down there. As a member of the board, I never had any notice of the walk being out of repair. I pass up and down that street frequently. It was an old walk, of course, and not a very good walk, like a new one would be. I have seen holes in the plank above there, but not at that place. I never saw any holes in the plank at that place; but between there and Mr. Gowdy's I have saw one or two holes in the plank. I never saw any holes between the two crossings at all.''

We think the court below committed no error in overruling appellant's motion for a new trial on the ground that the verdict was against the weight of the evidence, and since we are unable to find any error in the record injurious to appellant, the judgment is affirmed.